**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Charles S. RAGINS,
Defendant–Appellant.**

**No. 87–5084.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 4, 1987.

Decided March 8, 1988.

Clifford Scott, New York City, (Luther J. Battiste, III, Johnson, Toal & Battiste, P.A., Columbia, S.C., on brief), for defendant-appellant.

Eric William Ruschky, Asst. U.S. Atty. (Vinton D. Lide, U.S. Atty., Columbia, S.C., on brief), for plaintiff-appellee.

Before PHILLIPS, SPROUSE, and ERVIN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Charles Ragins appeals the denial of his pre-trial motion to dismiss, on double jeopardy grounds, an indictment returned against him charging conspiracy and substantive offenses related to illegal immigrations.[1] We affirm the district court's refusal to dismiss the substantive counts of the indictment, but reverse and remand for further proceedings respecting the conspiracy charge.

## I

On March 5, 1986, Charles Ragins, Wildred Knight and others were indicted by a federal grand jury in the District of South Carolina. The indictment (first indictment) contained eight separate counts of conspiracy to make false statements regarding marriage and residence to the Immigration and Naturalization Service (INS), in violation of 18 U.S.C. § 1546, and to conceal from the INS material facts regarding marriage and residence, in violation of 18 U.S. C. § 1001. The conspiracies were alleged to have taken place "in the District of South Carolina and elsewhere," at various times between January 4, 1983 and November 21, 1984. Each conspiracy involved a scheme to obtain an immigration visa for a person of Jamaican nationality by means of

---

1. We have jurisdiction over this interlocutory appeal under 28 U.S.C. § 1291. *Abney v. United States,* 431 U.S. 651, 657, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977).

a fraudulent marriage to an American citizen.

Wildred Knight was charged as a defendant in all of the eight conspiracies, but his cast of co-conspirators varied. Count I alleged that Knight had conspired with Barbara Beckford Burgess and "others to the Grand Jury unknown"; Counts II and III, that he had conspired with Leonard Fred Bhagwandat and "others to the Grand Jury unknown"; and count IX, that he had conspired with Charles Ragins, Preston Gass, and Salome Burgess. In the four remaining conspiracy counts Knight was alleged to have conspired simply with "others to the Grand Jury unknown." The indictment also contained two counts charging Knight and others with the substantive offense of possessing an identification document with intent to defraud the United States, in violation of 18 U.S.C. § 1028(a)(4).

Ragins was specifically named as a defendant in only two of the first indictment's ten Counts—Counts IX and X, which involved the marriage of Salome Graham and Solomon Burgess. Count IX charged Ragins, Knight and two others—Preston Gass and Salome Graham—with conspiring to violate 18 U.S.C. §§ 1546 and 1001; Count X charged Ragins, Knight and Gass with the substantive offense of possessing an identification document with intent to defraud the United States in violation of 18 U.S.C. § 1028(a)(4).

Two weeks before trial, Wildred Knight pled guilty to the conspiracy charges in Counts II and IX, and disclosed that Ragins, who at that point had been charged in only one of the eight conspiracies—the conspiracy charged in Count IX—had also been involved in the conspiracies charged in Counts I and IV. Rather than obtaining a superseding indictment charging Ragins with the additional offenses, the government chose to proceed to trial against him under the original indictment. The case was tried to a jury, which acquitted Ragins on both counts.

On April 8, 1987, the federal grand jury returned a second indictment charging Ragins with offenses based on his participation in several other allegedly fraudulent marriages. The second indictment, which is the subject of this appeal, contains three counts. Count I charges Ragins, Eloise Davis, and "others to the Grand Jury known and unknown" with a continuing conspiracy to violate the same statutory provisions charged in the first indictment, 18 U.S.C. §§ 1546 and 1001. The second indictment sets out twenty overt acts in furtherance of this conspiracy, which is alleged to have existed from on or before January 4, 1983 through May 30, 1984, in the District of South Carolina and elsewhere. Eleven of these overt acts were also alleged as overt acts in the conspiracies charged in the earlier indictment. The instant indictment also contains two substantive offenses: Count II charges both Ragins and Davis with possession of an identification document with intent to defraud the United States, in violation of 18 U.S.C. § 1028(a)(4), and Count III charges Ragins alone with aiding and abetting others in the violation of the same statute.

Before trial, Ragins moved to dismiss the indictment on the basis of double jeopardy, contending that it accused him of the same offenses for which he was acquitted in the earlier trial. The district court denied the motion to dismiss, and Ragins took this interlocutory appeal.

## II

■ The Double Jeopardy Clause of the fifth amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." There are two distinct components to this constitutional guarantee. The first provides protection against the imposition of cumulative *punishments* for the "same offense" in a single criminal trial; the second against being subjected to successive *prosecutions* for the "same offense," without regard to the actual imposition of punishment. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Ragins argues that the instant indictment violates the second of these guarantees because it subjects him to reprosecution for

offenses of which he was acquitted in 1986. The critical question, then, is whether any or all of the offenses charged against him here are the "same offenses" as those charged against him in the earlier indictment.

■ It is important at the outset to recognize that different "same offense" tests apply depending on the particular context in which the double jeopardy plea is asserted. Where the plea is against the imposition of cumulative sentences for multiple convictions obtained at a single criminal trial, double jeopardy's role is limited to assuring that the sentencing court does not exceed its legislative authorization by imposing more than one punishment for something the legislature has defined as a single crime. *Brown,* 432 U.S. at 165, 97 S.Ct. at 2225; *see Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). In this context, the established test for determining whether two offenses are the "same" is that first set forth in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The *Blockburger* test, which is essentially one of legislative intent, focuses on the formal elements of the two crimes, finding them to be different offenses if each requires proof of a fact which the other does not. *Id.*

■ Where, on the other hand, the plea is against successive prosecutions, double jeopardy serves the additional purpose of providing criminal defendants with a measure of finality and repose. *Brown,* 432 U.S. at 165, 97 S.Ct. at 2225; *see United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971) (plurality opinion). In this aspect, double jeopardy guarantees that an accused who has once stood the ordeal of criminal prosecution through to judgment—whether of conviction or acquittal—shall not be required to "run the gauntlet" of trial again for the same alleged misconduct. *Green v. United States,* 355 U.S. 184, 187–90, 78 S.Ct. 221, 223–26, 2 L.Ed.2d 199 (1957); *see Jordan v. Virginia,* 653 F.2d 870, 873 (4th Cir.1980); *United States v. Sabella,* 272 F.2d 206, 211–12 (2d Cir.1959). Given the multiplicity of offenses that may arise from a single criminal transaction, the formalistic *Block-*

*burger* test, with its narrow focus on the technical elements of the offenses charged, is inadequate to vindicate this constitutional guarantee against retrial. The general test for determining whether successive prosecutions involve the "same offense" is therefore a more flexible and pragmatic one, which focuses not on the formal elements of the two offenses but rather on the proof actually utilized to establish them. Under this "same evidence" test, the second prosecution is barred by double jeopardy if the evidence actually used to prosecute the first offense would suffice to convict of the second offense as charged. *Jordan,* 653 F.2d at 873–74; *see In re Nielsen,* 131 U.S. 176, 188, 9 S.Ct. 672, 676, 33 L.Ed. 118 (1889), quoting *Morey v. Commonwealth,* 108 Mass. 433, 434 (1871); *Sabella,* 272 F.2d at 211.

■ In most instances, the "same evidence" test, pragmatically applied, provides adequate protection against successive prosecutions. In conspiracy cases, however, the peculiar characteristics of the offense itself present special problems that require application of an even more flexible test. The gist of the crime of conspiracy is the agreement to commit unlawful acts. *Iannelli v. United States,* 420 U.S. 770, 777, 95 S.Ct. 1284, 1289–90, 43 L.Ed.2d 616 (1975). But the same conspiracy may be established by different aggregations of proof, for a single agreement may continue for an extended period of time and involve the commission of numerous criminal acts. Strict application of the "same evidence" test to successive conspiracy charges would therefore permit the government to subject an accused to repeated prosecutions for what is in reality the same criminal conspiracy, simply by selecting a different set of overt acts for each indictment. For this reason, this circuit, along with most others, has adopted a multi-pronged "totality of the circumstances" test to determine whether two successive conspiracy counts charge the "same offense" within the meaning of the double jeopardy clause. *See United States v. MacDougall,* 790 F.2d 1135, 1144 (4th Cir.1986). Under this test, the court is to consider five factors in as-

sessing the validity of a double jeopardy claim lodged against successive conspiracy charges: (1) the time periods covered by the alleged conspiracies; (2) the places where the conspiracies are alleged to have occurred; (3) the persons charged as co-conspirators; (4) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other descriptions of the offenses charged which indicate the nature and scope of the activities being prosecuted; and (5) the substantive statutes alleged to have been violated. *Id.* at 1144.

It is also important to note the special procedural problem presented by the assertion of the double jeopardy plea at this particular point in the criminal proceedings. The problem is, simply put, that of determining in advance of a pending trial whether it will be for the "same offense" as that earlier prosecuted to judgment. And it is a problem that again is compounded where the successive offenses charged are manifestly related, allegedly the same, conspiracies.

With these principles in mind, we turn to an analysis of Ragins' double jeopardy plea.

### III

■ The normal "same evidence" test readily disposes of the plea as to the substantive offenses charged in Counts II and III of the instant indictment. The first indictment charged Ragins with but a single substantive offense, the possession of a birth certificate in the name of Solomon Burgess. Counts II and III of the instant indictment, by contrast, charge him with the possession of a birth certificate in the name of Marvin Stewart. Because the evidence used to prosecute the possession offense charged in the earlier indictment thus would not suffice to support a conviction under Counts II and III of this indictment, the double jeopardy plea was rightly rejected as to these two counts.

### IV

The conspiracy offense charged in Count I of the present indictment presents a much more difficult "same offense" problem. The district court recognized that the "totality of the circumstances" test should be applied to this charge, but held that its application did not require dismissal. The district court's analysis depended critically upon the fact that Ragins had been named as a defendant in only one of the eight conspiracies in the first indictment—the conspiracy charged in Count IX. The district court ruled that the time, place, personnel and overt acts of the conspiracies alleged in Counts I through VIII of the first indictment had no bearing on Ragins' double jeopardy claim, as he had never been put in jeopardy for those eight conspiracies. The conspiracy charged here, the district court held, was properly compared only to the one conspiracy charged to Ragins, that in Count IX, of the earlier indictment. Applying the *MacDougall* factors to the language of the two counts, the district court concluded that they referred to two separate offenses. The conspiracy charged in the second indictment allegedly spanned an eighteen-month period beginning on or about January 4, 1983 and continuing through May 30, 1984, whereas the earlier conspiracy was limited to the two-day period of August 27–28, 1984. The conspiracy here was alleged to have occurred in several different towns in southeastern South Carolina—Sumter, Bishopville, Manning and Kingtree; the first conspiracy was alleged to have occurred in Bishopville only. The cast of characters alleged in this conspiracy also appeared to be different from the earlier conspiracy: Count I of this indictment charged Ragins, Davis and "others to the Grand Jury known and unknown" as co-conspirators, while Count IX of the earlier indictment referred only to Ragins, Davis, Gass, and Graham. Finally, the overt acts alleged in this conspiracy were completely different from those alleged in Count IX of the earlier indictment. On this basis, the district court concluded that Count I of this indictment did not charge Ragins with the same conspiracy offense for which he had been earlier put in jeopardy.

If we focus solely on the literal language of the two conspiracy counts, the district court's conclusion seems reasonable, for the two conspiracies charged do not appear to overlap at all in time, personnel, or overt acts. But as we have emphasized, the totality of the circumstances test is to be given flexible application so that the government may not nullify the constitutional protection against double jeopardy by artful pleading. *See MacDougall*, 790 F.2d at 1144–45; *see also Short v. United States*, 91 F.2d 614, 624 (4th Cir.1937) (Parker, J.) ("The constitutional provision against double jeopardy is a matter of substance and may not thus be nullified by the mere forms of criminal pleading."). To find no double jeopardy violation in these successive conspiracy prosecutions, the courts must be satisfied that Ragins was involved in two separate and distinct criminal agreements: a broad continuing agreement with Davis and others known and unknown to obtain immigration visas for a number of Jamaican aliens by means of fraudulent marriages to American citizens, and a second agreement, more limited in scope and duration and utterly unrelated to the first, whose sole purpose was to obtain an immigration visa for a particular Jamaican alien, Salome Graham. Only so can double jeopardy's protection against the special threat of deliberate or inadvertent "trial runs" posed by the amorphous nature of criminal conspiracy be insured.

Reading the two indictments as a whole, and confining inquiry to their texts, it is obvious that both conspiracies with which Ragins was charged, as well as the seven other conspiracies alleged against other named defendants in the first indictment, may in reality have been manifestations of a single continuing conspiracy. Each of the nine "separate" conspiracies alleged in the two indictments took place within a fifty-mile radius of Sumter, South Carolina, sometime between January 4, 1983 and November 21, 1984. Each had the same purpose: to obtain an immigration visa for one or more Jamaican aliens. The operation of each conspiracy followed an unbroken and repetitive pattern: the alien was married to an American citizen (or someone posing as an American citizen) somewhere in South Carolina; someone filed with the INS, on behalf of the alien, a "Petition to Classify Status of Alien Relative for Issuance of Immigrant Visa"; and the alien then entered the United States as the spouse of an American citizen. Three of the eight marriages mentioned in the first indictment were also mentioned in the second, and eleven of the overt acts alleged in furtherance of the conspiracies in the first indictment were also alleged as overt acts in furtherance of the conspiracies in the second indictment. All eight of the conspiracies in the first indictment listed Wildred Knight as among the conspirators. Though none of them mentioned Davis, three of them referred to an unnamed woman posing as "Joyce Ann Horn" while Davis is alleged to have posed as Horn in the conspiracy charged in the second indictment. Ragins was mentioned in only one of the eight conspiracies charged in the first indictment, but three of them mentioned an unnamed man posing as either Marvin Stewart or Solomon Burgess and Ragins is alleged to have posed as both in the conspiracy charged in the second indictment. The second indictment is replete with allegations that Ragins and Davis participated in sham marriages posing as various aliens who were involved in the conspiracies in the first indictment. Though the second indictment does not mention Knight, it contains a blanket allegation that Ragins and Davis conspired with "others known and unknown." Similarly, each of the conspiracies in the first indictment that does not mention Ragins or Davis contains the blanket allegation that Knight conspired with "others to the grand jury unknown." Under these circumstances, it does not take a great deal of imagination to conclude that Knight was certainly one of the unnamed "others known and unknown" in the Ragins/Davis conspiracy charged here, and that Ragins and Davis were among the unnamed "others to the grand jury unknown" involved with Knight in the various conspiracies in the first indictment.

For these reasons, we think it highly likely—certainly arguable from the face of

the two indictments—that the nine "separate" conspiracies alleged in the two successive indictments were manifestations of a single continuing conspiracy to defraud the INS—a conspiracy which existed in the area around Sumter, South Carolina, from January 1983 until late November of 1984, involved Knight, Ragins, Davis and a host of Jamaican aliens, and had as its object the procurement of immigration visas for the Jamaican aliens through fraudulent marriages to American citizens.[2]

The district judge who presided at Ragins' first trial was convinced that the eight conspiracies there charged were but a single conspiracy, and chided the government for breaking that conspiracy up into eight separate violations of the conspiracy statute.[3]

## V

Since the issue is obviously a close one, the proper allocation of the burden of proving the identity of—or the distinction between—the two offenses charged is critical. The initial burden of raising and pleading the double jeopardy claim lies of course with the defendant. It has traditionally been assumed that a defendant claiming double jeopardy in a second prosecution also bears the burden of persuading the factfinder that the two offenses charged are in fact the same. *See, e.g., United States v. Marable,* 578 F.2d 151, 153 (5th Cir.1978) ("To support a claim of double jeopardy, a defendant must show that the two offenses charged are in law and fact the same offense."). Though it made no direct reference to the burden of proof issue, the district court apparently assumed that it lay with the defendant throughout the proceeding. *See* J.A. 97 ("Ragins has failed to show the instant indictment deprives him of his fifth amendment rights. Accordingly, the motion to dismiss is denied.").

When a double jeopardy claim is raised before commencement of the second trial, however, a defendant is at a serious disadvantage in attempting to prove the identity of the successive offenses charged to him. There is as yet no record from the second

---

2. Further extrinsic evidence that Knight, Ragins and Davis were involved in a single continuing conspiracy to defraud the INS which encompassed each of the discrete "conspiracies" alleged in the two indictments, came out at Ragins' first trial. Much of this evidence came from Knight himself, who, after pleading guilty to two of the conspiracies charged in the first indictment, turned state's evidence and implicated Ragins in two others. Other evidence adduced at trial implicated Ragins in a third conspiracy charged in the first indictment, and the government introduced, under Fed.R.Evid. 404(b), evidence that Ragins had participated in two fraudulent marriages not mentioned in the first indictment. All of this evidence reappeared in the second indictment as manifestations of the conspiracies alleged there.

The district court concluded that this overlap in evidence was "irrelevant" to the double jeopardy inquiry because the 404(b) evidence had been introduced in the first trial for the limited purpose of proving intent circumstantially. The district court relied upon *United States v. Booth,* 673 F.2d 27, 30 (1st Cir.1982). *Booth* involved a double jeopardy challenge to successive conspiracy prosecutions. As in this case, evidence of some of the overt acts alleged in furtherance of the second conspiracy had been introduced at the defendant's trial on the first conspiracy charge under Fed.R.Evid. 404(b). Unlike the events that form the basis for the conspiracies in this case, however, those in *Booth* occurred some 2000 miles apart. Applying the totality of the circumstances test, the First Circuit upheld the district court's determination that the two conspiracies were not the same. Nowhere did it say that the 404(b) evidence was irrelevant to the double jeopardy question. Indeed, the fact that such evidence was introduced at the defendant's first trial is obviously relevant to the fourth factor of the totality of the circumstances test, for it indicates the nature and scope of the activities which the government is trying to prosecute. *See United States v. Marable,* 578 F.2d 151, 155–56 (5th Cir.1978).

3. The government readily admits that in the first indictment it charged nine separate conspiracies, each centering around a single marriage transaction, in order to avoid the risk that any convictions obtained against the individuals involved would be set aside under *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). At the time the government secured the first indictment, the only person it could link to all nine of the marriages was Knight; while it had evidence that Ragins, Beckford and Bhagwandat had participated in some of the other marriages, it could not link them to all of them. Since it could link Ragins only to the Burgess/Graham marriage that was the subject of the conspiracy set forth in Count IX, he was named as a co-defendant in that conspiracy only.

trial, and the rules of criminal procedure give the defendant little opportunity to discover the proof on which the government intends to rely in that trial. He must therefore rely on the indictments themselves, his own testimony, and any testimony he can obtain from his co-defendants and other third parties. But the government controls the precision with which the second offense is charged, the defendant's own testimony is unlikely to carry much weight, and he is unable to offer his co-defendants immunity for their testimony. Unless the prosecution is utterly inept in drafting the two indictments, then, it will often be impossible for the defendant to carry the burden of proving that the two offenses charged against him are in reality one and the same.

Until the Supreme Court held in *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), that the denial of a motion to dismiss an indictment on double jeopardy grounds was appealable interlocutorily, the appellate courts seldom had occasion to confront this problem. In the years since *Abney*, however, eight of the federal circuits—indeed, every circuit that has addressed the issue—have held that when a defendant puts double jeopardy in issue with a non-frivolous showing that an indictment charges him with an offense for which he was formerly placed in jeopardy, the burden shifts to the government to establish that there were in fact two separate offenses. *See, e.g., United States v. Loyd*, 743 F.2d 1555, 1562–63 (11th Cir.1984); *United States v. Booth*, 673 F.2d 27, 30–31 (1st Cir.1982); *United States v. Bendis*, 681 F.2d 561, 564 (9th Cir.1982); *United States v. Jabara*, 644 F.2d 574, 576–77 (6th Cir.1980); *United States v. Stricklin*, 591 F.2d 1112, 1124 (5th Cir.1979); *United States v. Tercero*, 580 F.2d 312, 315 n. 12 (8th Cir.1978); *United States v. Inmon*, 568 F.2d 326, 331–32 (3d Cir.1977); *United States v. Mallah*, 503 F.2d 971, 986 (2d Cir.1974); *see also United States v. Castro*, 629 F.2d 456, 466 (7th Cir.1980) (Fairchild, C.J., concurring).

■■■■ The reasoning of these decisions is compelling. The Supreme Court made clear in *Abney* that the double jeopardy clause creates not only the right to be free from multiple punishments for the same offense, but also the right to be immune from multiple prosecutions for the same offense. This right of immunity from prosecution is relatively meaningless if the burden of establishing that the two offenses are indeed the same is allocated to the defendant, because of the practical problems of proof above discussed. *Abney* thus seems to compel the conclusion that the burden of proof ought properly to shift to the government after the defendant has made some sort of threshold showing. We therefore hold that although the defendant has the initial burden of going forward with the evidence by putting his double jeopardy claim in issue, once he has made a non-frivolous showing that an indictment charges him with an offense for which he was formerly placed in jeopardy, the burden of establishing that there were two separate crimes shifts to the government. Because double jeopardy is not an element of the crime but rather a personal privilege, the government need only prove that there were in fact two separate offenses by a preponderance of the evidence. *See Inmon*, 568 F.2d at 332; *cf. Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (voluntariness of confession may be determined by preponderance of the evidence). Where, as here, the issue is whether there were one or two conspiracies, then, the government must prove by a preponderance of the evidence that the indictments refer to two separate criminal agreements.

■■■■ Applying these principles, we conclude that Ragins made a sufficient preliminary showing to shift the burden of proof to the government. Although he presented no evidence at the double jeopardy hearing, his counsel went to great lengths to point out the overlaps between the two conspiracies—in time, place, personnel, overt acts and method of operation—that are apparent from a careful examination of the two indictments. This was a sufficient demonstration that Ragins' claim of double jeop-

ardy was not frivolous to cast the burden of proof upon the government. *See, e.g., Loyd,* 743 F.2d at 1563. The district court's failure so to cast the burden of proof renders its determination that there were two separate conspiracies constitutionally suspect. We will therefore vacate the order denying the double jeopardy plea as to the conspiracy counts and remand the case to the district court with instructions to reconsider that plea in light of this opinion. Under the circumstances, we believe that fair reconsideration can only be had on a reopened record, and we so direct.

 In that connection we think it justified to anticipate one question that may well arise if defendant desires to testify in support of his double jeopardy plea on remand. This is the question whether any such testimony may then be used against him in any later trial on the merits, in other words, whether the defendant waives his privilege against self-incrimination as to that testimony by offering it at a pretrial double jeopardy hearing?

We hold that he does not, on the authority of *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In *Simmons,* the Court held that a defendant may testify in a fourth amendment pretrial suppression hearing without fear that his testimony will be used against him at the subsequent trial on the merits. *Id.* at 389–94, 88 S.Ct. at 973–76. The Court reasoned that it would be intolerable to require that the defendant waive one constitutional right in order to assert another. *Id.* at 394, 88 S.Ct. at 976. The *Simmons* reasoning is equally applicable in this context. *See Inmon,* 568 F.2d at 332–33. We therefore hold that any testimony offered by the defendant in a pretrial double jeopardy hearing may not be used against him in a subsequent trial on the merits if the district court rejects his double jeopardy claim. *See Id.*

## VI

 The government argues that even if there was in fact only a single conspir-

acy, this prosecution of Ragins should be allowed to go forward under the "undiscovered crime" exception to the double jeopardy rule. There is no merit to this argument. The government undoubtedly knew of the crime itself—the conspiracy to defraud the INS—at the time it began the first prosecution. It also knew that Ragins had been involved to some degree in that crime. The only fact that was arguably "undiscovered" at the time of the first prosecution was the extent of Ragins' involvement. This is a far cry from the typical undiscovered crime case—e.g., the assault that becomes a homicide when the victim dies. *See Diaz v. United States,* 223 U.S. 442, 448–49, 32 S.Ct. 250, 251, 56 L.Ed. 500 (1912). The undiscovered crime exception was not intended to permit the government to reprosecute a defendant simply because it has discovered more evidence strengthening its case; indeed, if the exception were so construed, it would swallow the successive prosecution rule itself.

## VII

 Ragins has an alternative contention in support of his double jeopardy claim. Because, if accepted, it would require us to uphold the plea as to both the substantive and conspiracy counts without remanding for reconsideration of the latter, we must address it. The contention is that without regard to whether the successive prosecutions are for the "same offense," the instant prosecution is barred by the doctrine of collateral estoppel embodied in the fifth amendment guarantee against double jeopardy.[4] *See Ashe v. Swenson,* 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970). Under that principle, once an issue of ultimate fact has been resolved in a defendant's favor by a valid and final judgment in a criminal proceeding, the government may not relitigate that issue in a subsequent criminal prosecution against him. *Id.* at 443, 90 S.Ct. at 1194. If the fact necessarily determined in the

---

**4.** Appellant's brief does not make it clear whether he asserts collateral estoppel as a bar to the whole prosecution or only to that on the sub-

stantive counts. It could be read either way. We therefore consider it in its widest possible application.

first trial is an essential element of the second offense, collateral estoppel may operate as a complete bar against the subsequent prosecution, affording the defendant "double jeopardy" protection, even when that prosecution is not for the "same offense" as the first. *See United States v. Head,* 697 F.2d 1200, 1205 (4th Cir.1982). In other instances, collateral estoppel may operate not wholly to preclude prosecution but simply to foreclose the relitigation of certain issues of fact that were necessarily resolved in the defendant's favor in the first trial. *See Hess v. Medlock,* 820 F.2d 1368, 1373–74 (4th Cir.1987).

█ A defendant relying on the collateral estoppel component of double jeopardy bears the burden of proving that the issue whose relitigation he seeks to foreclose was "necessarily determined" in the former trial. *Head,* 697 F.2d at 1208–09. In determining what issues were necessarily resolved in the first trial, a court must conduct a careful examination of "The record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter," in order to decide "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1195.

█ Ragins argues that when the first jury acquitted him of the offenses charged in Counts IX and X—the conspiracy fraudulently to obtain an immigration visa for Salome Graham and the possession, with intent to defraud the INS, of an identification document in the name of Solomon Burgess—it necessarily determined that he was not involved in the single, continuing conspiracy to defraud the INS which he claims is the basis of the current charges. Because his involvement in this ongoing scheme is an "essential element" of the offenses with which he is now charged, he argues, the current prosecution is absolutely barred, even if it is not technically for the same offenses as the earlier prosecution. We reject this contention, on the basis of the record review mandated by *Ashe.*

In this case, the jury that acquitted Ragins did not necessarily determine any fact that would make his conviction on the current charges impossible. Since a conspiracy under § 371 requires proof of an overt act, *see* 18 U.S.C. § 371, the jury could have based its acquittal on the conspiracy charge solely upon a finding that Ragins did not commit the particular overt acts alleged. Similarly, the jury could have based its acquittal on the substantive offense solely upon a finding that Ragins did not possess the particular identification document charged. Neither finding would necessarily preclude his conviction on the current charges. For this reason, collateral estoppel does not operate to bar this prosecution altogether. While it might theoretically apply more narrowly to foreclose the relitigation of particular issues of fact that were necessarily determined in the first trial, Ragins has not made any such argument.

## VIII

The denial of the motion to dismiss is affirmed as to the substantive offenses charged in Counts II and III of the indictment. As to the conspiracy charged in Count I, the order denying the motion to dismiss is vacated and the case remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART; VACATED IN PART; AND REMANDED.