UNITED STATES of America

v.

Charles S. RAGINS and Eloise
Dinkins Davis.

Crim. No. 87–79.

United States District Court,
D. South Carolina,
Columbia Division.

June 24, 1988.

Eric Wm. Ruschky, Asst. U.S. Atty., Columbia, S.C., for plaintiff.

Luther J. Battiste, III, Columbia, S.C., for Charles Ragins.

John H. Hare, Asst. Federal Public Defender, Columbia, S.C., for Eloise Davis.

## ORDER

HENDERSON, District Judge.

This matter is before the Court on the motion of defendant Charles S. Ragins to dismiss the indictment against him on the ground it subjects him to double jeopardy. By Order filed June 1, 1987, the Court denied defendant Ragins's motion, finding that he had not been subjected to double jeopardy by virtue of any of the indictment's three counts. On appeal, the Fourth Circuit affirmed the Court's ruling as it applied to Counts Two and Three, but remanded for further determination as to whether Count One subjected Ragins to double jeopardy. *See United States v. Ragins*, 840 F.2d 1184 (4th Cir.1988). For the reasons set forth below, the Court now grants defendant Ragins's motion and dismisses Count One of the indictment as it relates to him.

The fifth amendment to the United States Constitution guarantees that no person "be subject for the same offence to be twice put in jeopardy of life or limb." Where, as here, a criminal defendant is threatened with a second prosecution for the same offense, the double jeopardy clause serves to provide him with a measure of finality and repose. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *Ragins*, 480 F.2d at 1189.

Defendant Ragins asserts that if he is tried on Count One of the present indictment, he will be subjected to a second prosecution for a single offense. Count One charges both defendant Ragins and defendant Eloise Dinkins Davis with conspiracy to defraud the United States in violation of section 371 of title 18 of the United States Code. Specifically, Count One charges that the defendants conspired to defraud the Immigration and Naturalization Service ("INS") by making false statements and concealing material facts regarding the marriages and residences of certain aliens, in violation of sections 1546 and 1001 of title 18 of the United States Code. The alleged conspiracy involved a scheme to arrange fraudulent marriages between American citizens and Jamaican nationals and to apply for visas based on those marriages. The moving force behind the conspiracy appears to have been one Wildred Gordon Leroy Knight. Ragins was previously tried and acquitted on a virtually identical conspiracy charge under an earlier indictment. That indictment was returned in 1986 against Knight, Ragins and others and set forth ten counts in connection with eight fraudulent marriages. Ragins was named only in Counts Nine and Ten and it is the conspiracy charge in Count Nine on which he bases his

double jeopardy claim.[1] Ragins contends the conspiracy alleged in Count One of the present indictment was in fact part of a broad, continuing conspiracy that also encompassed the conspiracy for which he was tried under Count Nine of the first indictment. In response, the Government asserts that each fraudulent marriage alleged in the two indictments constituted a separate conspiracy on which defendant Ragins can be separately tried.[2] The Court rejects the Government's argument for the following reasons.

■ Whether successive criminal acts manifest a single conspiracy or many depends on the number of agreements involved:

> [T]he precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects. Whether the object of a single agreement is to commit one or many crimes, it is in either case the agreement which constitutes the conspiracy which the statute punishes.

*Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942). Thus, in order to reject Ragins's claim of double jeopardy, the Court must find that he was involved in at least two separate agreements and that the one on which he was previously tried and acquitted was limited in purpose to obtaining a single visa for a particular Jamaican as alleged in the first indictment. *Ragins,* 840 F.2d at 1190.[3] In determining the number of agreements in which Ragins was involved, the Court must consider the "totality of the

circumstances" in light of the following five factors: (1) the time periods covered by the alleged conspiracies; (2) the places where the conspiracies are alleged to have occurred; (3) the persons charged as co-conspirators; (4) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other descriptions of the offenses charged which indicate the nature and scope of the activities being prosecuted; and (5) the substantive statutes alleged to have been violated. *Ragins* 840 F.2d at 1188–89; *United States v. MacDougall,* 790 F.2d 1135, 1144 (4th Cir.1986). The Court concludes that, under this totality of the circumstances test, the conspiracies alleged in both indictments are in fact part of a single continuing conspiracy to defraud the INS and that as a consequence Count One of the present indictment subjects Ragins to double jeopardy.

On appeal of this case, the Fourth Circuit found that under the totality of the circumstances it is "highly likely—certainly arguable from the face of the two indictments—that the nine 'separate conspiracies' alleged in the two successive indictments were manifestations of a single continuing conspiracy to defraud the INS—a conspiracy which existed in the area around Sumter, South Carolina, from January 1983 until late November of 1984." *Ragins,* 840 F.2d at 1190–91. Comparing the two indictments, the Fourth Circuit found that (1) all the overt acts in the two indictments occurred within the vicinity of Sumter, South Carolina; (2) the acts spanned a period of time from January 4, 1983, through November 21, 1984; (3) each marriage was

---

1. Count Ten charged Ragins with the substantive crime of possessing a birth certificate with intent to defraud the United States.

2. The first indictment set out a separate conspiracy charge in a separate count for each marriage performed by Knight and his co-conspirators. Count One of the present indictment, however, alleges a single conspiracy encompassing six different marriages. The Government claims that, in attempting to avoid "stacking charges" in the present indictment, it mistakenly drafted a "duplicitous" count, that is, one which charges multiple crimes. In reality, the Government contends, each of the marriages alleged in each indictment was performed pursuant to a separate conspiracy. To remedy this

defect, the Government proposes to obtain a superseding indictment charging each marriage as a separate conspiracy in a separate count.

3. The Fourth Circuit viewed the determinative issue as whether there were two separate conspiracies, a single narrow conspiracy as alleged in Count Nine of the first indictment and a second totally unrelated conspiracy manifested by the various acts alleged in Count One of the present indictment. *See Ragins,* 840 F.2d at 1190. This Court, however, has undertaken a somewhat different inquiry in light of the Government's current contention that Count One alleges facts supporting not one but six separate conspiracies. *See supra* note 1.

performed for the same purpose, namely, to obtain an immigration visa for Jamaican aliens; (4) the method employed in each instance was the same; and (5) the various marriages involved a common cast of co-conspirators. *Ragins*, 840 F.2d at 1190.[4] On the basis of these facts, the Court held that Ragins had made a preliminary, non-frivolous showing of double jeopardy and that the burden therefore shifted to the Government to establish by a preponderance of the evidence that there were at least two separate criminal agreements. *Ragins*, 480 F.2d at 1192–93.

On remand, the Government's primary argument in opposition to Ragins's motion relies on a "wheel" analysis of the marriage schemes. Courts and commentators have frequently employed a wheel framework to analyze conspiracies involving a single person or group (the "hub") who deals individually with one or more other persons (the "spokes"). W. LaFave & A. Scott, *Criminal Law* 480–81 (1972). Within this framework, the hub's dealings with each of the spokes must be viewed as a separate conspiracy unless there is some relationship between the spokes that can form a rim to connect the spokes and complete the wheel. *Id.* In applying the wheel framework, the Government identifies Ragins and Knight as the hub of the conspiracies and the individual Jamaicans for whom the marriages were performed as spokes. Asserting there is no evidence that any of the Jamaicans were in any way related to each other, the Government contends there is no rim to connect the individual Jamaicans and produce a complete wheel. The Court finds the Government's "wheel" analysis unpersuasive.

▮ The wheel framework is an artificial and confusing construct with as much potential to confuse as to illuminate. *See U.S. v. Elam*, 678 F.2d 1234, 1246 (5th Cir.1982) (wheel analogies "impede rather than facilitate analysis of the 'single conspiracy—multiple conspiracy issue' "). Depending upon which participants are identified as the hub and the spokes, application of that framework can produce inconsistent and anomalous results.[5] As noted above, the determinative issue here is whether Ragins's participation in the various marriages alleged in the two indictments was part of a single, continuing agreement so that prosecution under the present indictment would constitute double jeopardy.[6] In this Circuit, that issue is to be resolved not by molding the facts into an abstract wheel configuration but by considering the totality of the circumstances in light of the five factors enumerated above. A finding under the totality of the circumstances test that Ragins participated in numerous marriages pursuant to but a single agreement

---

4. The two indictments reveal that Ragins participated in at least 7 marriages. Count Nine of the first indictment charged Ragins with conspiracy in connection with a marriage between Solomon Burgess, Jr., and Salome Graham on August 27 or 28, 1984, in Bishopville, South Carolina. Count One of the present indictment alleges overt acts in connection with fraudulent marriages at the following times and locations: (1) January 4, 1983, in Manning, South Carolina; (2) January 4, 1983, in Bishopville, South Carolina; (3) July 8, 1983 in Manning, South Carolina; (4) July 8, 1983, in Kingstree, South Carolina; (5) July 27, 1983, in Bishopville, South Carolina; and (6) May 30, 1984, in Bishopville, South Carolina. Ragins may well also have participated with Knight in connection with four other marriages alleged against Knight "and others to the Grand Jury unknown" in the first indictment on (1) January 4, 1983 in Sumter (Count 2); (2) July 29, 1983 in Manning (Count 3); (3) May 30, 1984 in Bishopville (Count 7); and (4) July 6, 1984 in Sumter (Count 8). In addition, the affidavit of Wildred Knight implicates Ragins in three other fraudulent marriages at unspecified locations, one sometime in 1982, one on May 30, 1984, and one on March 9, 1984.

5. If the Government's analysis were correct, conspirators who entered into a single agreement among themselves to commit successive crimes could never be charged with a single overall conspiracy so long as one person involved in the commission of each crime was unrelated to the other crimes. Thus, for example, if a group of individuals agreed among themselves to divide a quantity of drugs and sell them to individual buyers, the sellers, under the Government's reasoning, would have to be charged with separate conspiracies, despite the existence of but one agreement among them, so long as each buyer was unrelated to the others. Such a result is both illogical and contrary to the holding in *Braverman*. *See supra* p. 1251.

6. *See supra* p. 1251.

should not be set aside merely because each marriage was performed for the benefit of a different, unrelated Jamaican. A single agreement may exist despite the presence of subconspiracies or subgroups. *See United States v. Ben M. Hogan Co.,* 769 F.2d 1293, 1302 n. 14 (8th Cir.1985), *vacated on other ground,* 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986); *United States v. Bibbero,* 749 F.2d 581, 587 (5th Cir.1984), *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2330, 85 L.Ed.2d 847 (1985); *United States v. Simmons,* 679 F.2d 1042, 1050 (3d Cir.1982), *cert. denied sub nom. Brown v. United States,* 462 U.S. 1134, 103 S.Ct. 3117, 77 L.Ed.2d 1370 (1983).

Hubs and spokes aside, the Government has offered no new argument to support the existence of more than one conspiracy. The Government's position remains essentially the same as before remand, that "there is no evidence to establish a continuing conspiracy." This assertion disregards the conclusion of the Fourth Circuit that defendant Ragins has made a preliminary showing of a single conspiracy. The Government now bears the burden of establishing its position by a preponderance of the evidence, a standard it has failed to satisfy. In fact, the testimony of the Government's witness that Ragins was directly involved in some capacity with at least eleven of eighteen fraudulent marriages arranged by Knight tends to support rather than rebut Ragins's claim of double jeopardy. Consequently, the Court finds the acts alleged in Count One of the present indictment were committed under the same agreement as those alleged in Count Nine of the first indictment and dismisses Count One of the indictment on the ground of double jeopardy.

IT IS SO ORDERED.