929 F.2d 694
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Barth Chukwuma AMADI, a/k/a Barth C. Amadi, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Henry Chimezie OKPALA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leonard Chinedu Chikaodinaka CHIJI, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth Obumneke CHIJI, Defendant-Appellant.
 Nos. 90-5038.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 7, 1990.
Decided April 5, 1991.
 
 Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, Chief District Judge. (CR-89-104-C)
 Dale Stuart Morrison, Morrison & Penniston, Charlotte, N.C., for appellant Amadi.
 Michael Smith Scofield, Law Offices of Michael S. Scofield, Charlotte, N.C., for appellant Okpala.
 Jean Burlando Lawson, Charlotte, N.C., for appellant Leonard Chiji.
 Joseph Lester Ledford, Rankin, Merryman, Dickinson, Rawls & Ledford, Charlotte, N.C. (argued), for appellant Kenneth Chiji; Eben T. Rawls, III, Rankin, Merryman, Dickinson, Rawls & Ledford, Charlotte, N.C., on brief.
 Robert James Conrad, Jr., Assistant United States Attorney, Charlotte, N.C., for appellee; Thomas J. Ashcraft, United States Attorney, Charlotte, N.C., on brief.
 W.D.N.C.
 AFFIRMED.
 Before WIDENER and SPROUSE, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, Sitting by Designation.
 PER CURIAM:
 
 
 1
 The appeals in this action arise from the jury convictions and sentencings of three defendants in the court below and the sentencing of a fourth defendant who pled guilty in the court below.
 
 
 2
 Defendant Barth Chukwuma Amadi ["Amadi"] was convicted on Count 1 for conspiracy to commit bank fraud (18 U.S.C. Sec. 371), on Count 2 for bank fraud and aiding and abetting in such fraud (18 U.S.C. Secs. 1344 and 2), and Count 15 for interstate transportation of stolen goods (18 U.S.C. 2314). Defendants Leonard Chinedu Chikaodinaka Chiji ["L. Chiji"] and Henry Chimezie Okpala ["Okpala"] were convicted on Count 1 and Count 2, as set out above. The fourth defendant, Kenneth Obumneke Chiji ["K. Chiji"], pled guilty to Counts 1 and 2, and to a count alleging bank fraud.
 
 
 3
 After consideration of the briefs, the Joint Appendix, and the arguments of counsel, we affirm the ruling of the court below.
 
 
 4
 The appealing defendants were indicted with other codefendants and various unnamed co-conspirators. One of the coconspirators, Cy Anugwulo ["Anugwulo"], remained a fugitive at the time of the trial. The government's evidence in the trial below presented a pattern of organized activity in which the appellants participated in setting up and operating a fraudulent conspiracy simple in concept but complex in operation. Briefly, the conspiracy required the acquisition of false identification papers using fictitious names, such as false Social Security identifications and drivers licenses. Using these false identifications, a conspirator would open an account in one of the eight affected banks. The initial deposit in this account would be a fraudulent check drawn on a payee bank, which check the receiving bank would send forward through the usual channels for collection from the payee bank. The forwarded check was, in due course, returned by the payee bank marked as uncollectible.
 
 
 5
 While the clearing process went forward, the depositor wrote checks on the opened account. The proceeds of the checks were used to further the objectives of the conspiracy, a principal such objective being to acquire computer equipment and computers. Some of these items were then forwarded to Huntsville, Alabama, from whence they were shipped to Nigeria.
 
 
 6
 When these later checks were presented to the bank in which the account had been opened, the clearing process had indicated that funds were not available, and the bank returned the checks to the merchant. This was obviously an extensively organized and careful scheme to obtain the goods without payment, requiring carefully orchestrated steps to take account of the delay caused by the clearing process between the bank in which the account was initially opened and the payee bank. The foregoing sufficiently illustrates the complex and effective scheme to defraud. The factual matters relating to the various defendants will be amplified in the treatment of each appeal.
 
 A. Defendant Barth Amadi
 
 7
 Amadi asserts that the admission of evidence concerning matters which occurred outside the time of the conspiracy so unfairly prejudiced him that he could not receive a fair trial. The damaging pre-conspiracy evidence of which Amadi complains is the testimony of Corporal Collins of the Maryland State Police concerning crimes committed by Amadi's co-conspirator Anugwulo in 1985. According to Amadi, the fact that his address, telephone number, student loan application, and bank book were found in Anugwulo's Maryland residence in 1985 impermissibly linked Amadi with Anugwulo's activities in 1985.
 
 
 8
 Further, Amadi objects to the testimony of Secret Service Agent Mroz concerning certain documents introduced in evidence relating to the 1988 arrest of K. Chiji. As a later witness testified, the documents in question were found in Huntsville, Alabama. Amadi asserts that they had no bearing on matters that were occurring in Maryland and that they did not relate to any alleged crimes by Amadi in North Carolina.
 
 
 9
 Amadi's third objection is to the testimony of Agent Leigeber of the Federal Bureau of Investigation. His testimony related to his analysis of a bank account of Amadi in Huntsville, Alabama. As a result of these various objections, a motion for mistrial was made in the court below, and after extended argument, the motion was denied.
 
 
 10
 When read in light of the Joint Appendix, these objections do not hold water. First, the Joint Appendix illustrates that Collins' reference toi events in 1985 was used by the prosecution to show the on-going relationship between Anugwulo and Amadi. Although the record does not show when it began, it is apparent that the relationship went back at least to 1985. Further evidence indicated that the relationship continued into the period of the conspiracy and involved Amadi in that conspiracy.
 
 
 11
 Secret Service Agent Mroz testified that he was present during the execution of a search warrant on the Maryland residence of Okpala, K. Chiji, Anugwulo, and others. His testimony was that he saw two men trying to leave the scene in a Nissan car which was registered to K. Chiji. Chiji was apprehended but the other man fled. From a passport with an accompanying photograph obtained in Alabama from Barth Amadi, Mroz then identified the person who fled as being Anugwulo. While Mroz' testimony did not fully lay the proper foundation, the subsequent evidence of FBI Agent Leigeber permitted the proper introduction of the passport as an exhibit. Leigeber testified that he had obtained the passport, later identified as fraudulent, with Anugwulo's photograph from Amadi in Huntsville, Alabama. The fact that the passport was found in Amadi's possession, clearly relating to Anugwulo, is again part of the evidence linking Amadi to Anugwulo.
 
 
 12
 The objections as to Agent Leiberger's evidence are similarly without merit. The evidence in other portions of the trial clearly showed that Huntsville, Alabama was a shipping point for various computer goods, and other goods, obtained fraudulently in North Carolina. Further, Amadi's residence was in Huntsville, where he was apparently a full-time student. The fact that the shipping point happened to be outside the confines of North Carolina does not exclude it from the extent of the conspiracy. The objection that the seizure of this information in Alabama should have been excluded because it was outside the boundaries of North Carolina is frivolous.
 
 
 13
 Under the doctrine of Arizona v. Washington, 434 U.S. 497 (1978), deference is to be given to a trial court's decision on a motion for a mistrial. An analysis of the objections to the evidence set out above indicates that it is not really necessary to indulge in any particular deference in this case. The trial court was clearly right in denying the motion for a mistrial.
 
 B. Defendant Leonard Chiji
 
 14
 L. Chiji objects on the grounds that his conviction in North Carolina was barred by double jeopardy rules because of a previous conviction in the Eastern District of Michigan. In Michigan, L. Chiji was convicted of bank fraud for obtaining possession of $5,000 from a Michigan bank. Here again, the pattern of opening an account with a check which ultimately is bounced by the drawee bank and then writing checks on this newly opened account to obtain funds is repeated. As indicated above, L. Chiji was prosecuted in North Carolina for conspiracy to defraud a number of banks in North Carolina.
 
 
 15
 L. Chiji did not file his double jeopardy claim before trial. A double jeopardy claim is a personal defense, and if it is not raised before trial, it is waived. Fed.R.Crim.P. 12; 8 Moore's Federal Practice (2d Ed.), Sec. 12.03. Passing by that point, however, this court has stated that "the second prosecution is barred by double jeopardy if the evidence actually used to prosecute the first offense would suffice to convict of the second offense as charged." United States v. Ragins, 840 F.2d 1184, 1188 (4th Cir.1988). In this case, proof of the facts which led to conviction of bank fraud in Michigan clearly would not be sufficient to convict of conspiracy to defraud North Carolina banks. Thus, the double jeopardy argument made here is without merit.
 
 C. Henry Okpala
 
 16
 Okpala objects on the grounds that there was insufficient evidence as to the conspiracy count and the substantive bank fraud count to sustain his convictions. Again, we must resort to the Joint Appendix to determine the propriety of this objection. The record reveals that the November 1, 1989, search of an apartment occupied by Okpala and others--the search about which Mroz testified--resulted in the discovery of a number of incriminating facts.
 
 
 17
 Perhaps the most telling evidence was the discovery of 95 fraudulently obtained blank checks in a closet in Okpala's room. Significantly, fifty such checks were in the name of the Boston Advertising Company issued by Guaranty First Trust Bank. A $15,800 check from that account had been used as an initial deposit in the First National Bank in Charlotte, one of the victim banks. The other 45 checks found in Okpala's closet were all from the various victimized North Carolina financial institutions.
 
 
 18
 Although the packet of these checks was unopened, and neither Okpala's fingerprints nor handprints were found on the package or the checks, the package indicated that they had been sent from a "Dr. Kevin Williams" in Charlotte, North Carolina. The packet showed Dr. Williams' address to be 245 Artwyn Drive, Charlotte, North Carolina. The name of Kevin Williams and the address had been used on frequent occasions previously by the conspirators, and both were fictitious. In considering the significance of these checks, we note that L. Chiji had deposited in Michigan five of the checks drawn on the same banks in North Carolina. One of these checks deposited in Michigan led to L. Chiji's conviction there.[1]
 
 
 19
 Further evidence found in the November 1, 1989, search of the apartment included an airline ticket and a birth certificate in the name of John Michaelson, an alias used by the co-conspirators in depositing funds to the account of Amadi. Also authorities found various scraps of paper with Charlotte addresses in Okpala's room; another bit of paper with "David Robis, City Jail," with an Ann Arbor, Michigan, area code and number; telephone bills reflecting a number of calls to the jail where L. Chiji was incarcerated; and a false passport with a photograph of Henry Okpala, issued under the name of "Pastor Amica James."
 
 
 20
 Two automobiles were detected outside the Okpala apartment. One was a silver Nissan which had been registered in the name of K. Chiji and was purchased for cash on October 7, 1988, and the second a maroon Nissan purchased on October 6, 1988. The title to the maroon Nissan was found inside Okpala's apartment and confirmed that the automobile had been registered in the name of Barth C. Amadi.
 
 
 21
 Further evidence of Okpala's connection to the conspiracy could be found in the fact that Okpala undertook to get into the apartment during the course of the search. When the police identified themselves as police officers, Okpala tried to flee and he was caught. If "the wicked flee where no man pursueth," then when one does pursue, flight becomes somewhat more significant.
 
 
 22
 A final note in this respect arises from Okpala's introduction of evidence of his conviction for fraudulent use of a Social Security number in Maryland. Okpala's reason for introducing this evidence was to explain his flight during the search. Despite his reason for introducing this evidence, the Maryland conviction could also serve as evidence of a different crime similar in nature to those charged in the indictment, and could have been considered by the jury to prove motive, opportunity, intent, etc., pursuant to Fed.R.Evid. 404(b).
 
 
 23
 While we acknowledge that this evidence is primarily circumstantial in nature, it nonetheless is more than sufficient to permit the jury to conclude that Okpala was one of the participants in the conspiracy. As set out in United States v. MacDougall, 790 F.2d 1135, 1151 (4th Cir.1986), "The decision to overturn a jury verdict for want of substantial evidence must be confined to cases where the prosecution's failure to meet its burden of proof is clear." Further, the law is clear that a verdict challenged on appeal for lack of sufficient evidence "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942) (citations omitted).
 
 
 24
 We have stated the principle in the following terms: "The relevant question is not whether the appellate court is convinced of guilt beyond a reasonable doubt, but rather whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt." United States v. Chorman, --- F.2d ----, No. 88-5640 (4th Cir. July 31, 1990). The recitation of the evidence set out above would give to any "rational trier of fact" an appropriate basis to find the defendant guilty beyond a reasonable doubt. Accordingly, this appeal is without merit.
 
 D. Appeals of Sentencing
 
 25
 1. K. Chiji appeals from the finding of the court below in sentencing that he was an organizer and leader of a criminal enterprise. The testimony, as revealed in the Joint Appendix, clearly shows the following: K. Chiji was one of eight codefendants, together with unnamed other co-conspirators; his fingerprints were found on different bank documents at five of the eight victim banks;[2] he had obtained false identification materials such as false Social Security numbers in various names; he secured the mailbox and answering service, both of which were important to the furtherance of the scheme to defraud; he sent the 95 blank checks discussed supra to Okpala; and he was instrumental in sending fraudulently obtained goods of various types out of North Carolina, including computer equipment to his co-conspirator, Amadi. Further, a co-defendant testified at his own sentencing that K. Chiji had brought him into the organization, as did his coconspirator Amadi.
 
 
 26
 During the sentencing of K. Chiji, the court below dwelt on the fact that this was a very sophisticated, well-organized, and effective conspiracy to commit fraud. On the basis of the evidence against him, the court was clearly within its discretion to find that K. Chiji was an organizer and leader of that particular criminal enterprise.
 
 
 27
 K. Chiji also challenges the upward departure from the guideline range in his case. Once again, cursory reference to the Joint Appendix reveals the basis for the upward departure. The Appendix clearly indicates that K. Chiji had committed numerous frauds within the past four years and had been deported as a result of a felony conviction for fraud. He had illegally reentered the United States at the time of the events which brought about the charges in the trial below. The district court articulated these facts in support of its decision to depart upward and we perceive no error as to the sentencing of K. Chiji.
 
 
 28
 2. L. Chiji asserts that his sentence was improperly calculated because of the decision of the court below to deny the two point reduction for acceptance of responsibility. He argues that he had accepted responsibility for his conduct in Michigan in pleading guilty and that the Michigan court made the affirmative finding that he had accepted responsibility and awarded him the two point reduction. In some fashion, L. Chiji argues that because the sentence in Michigan had been reduced by two points for acceptance of responsibility, he should be given the same reduction in the North Carolina case. We note that L. Chiji did not plead guilty in the prosecution in North Carolina, but this point aside, the two-point reduction for acceptance of responsibility is committed to the discretion of the trial court. We perceive no abuse of discretion in not giving the two point reduction here.
 
 
 29
 L. Chiji further argues that the inclusion of the amount of the fraud in Michigan in the total of the fraud in North Carolina is punishing him twice for the amount of the fraud in Michigan. Once again, it should be noted that these are two separate proceedings with discretion given to the trial court to make an appropriate decision. L. Chiji proceeds to argue through four additional grounds relating to impropriety in his sentence, none of which constituted error on the part of the court below.
 
 
 30
 3. Amadi contends that the sentence in his case was in error because the court enhanced the sentence and because the court below refused a continuance relating to the submission of a sentencing memorandum by the government. These arguments are readily disposed of by noting that Amadi's brief indicates that "the only direct evidence tying Mr. Amadi to the conspiracy was a rental truck agreement and bills of lading." This considerably misrepresents the record and substantially discredits the possibility that Amadi's arguments concerning his sentence have any substance. As to the government's sentencing memorandum, Amadi asserts that he should have been granted a continuance because it was served on his counsel on the day of sentencing. As the court below observed, its review of the sentencing memorandum revealed nothing that was not already in evidence in the case and for that reason denied the continuance. We perceive no error in these actions.
 
 
 31
 4. Lastly, Okpala assigns error to the court below because it enhanced his base offense level by two levels, relying on a finding that his participation was "more than minimal planning." The Sentencing Guidelines increase the offense level by two under either or both of the following conditions: if there exists more than minimal planning, or if there exists a scheme to defraud more than one victim. U.S. Sentencing Guidelines Sec. 2F1.1(e)(2). As indicated supra, there clearly was a "scheme to defraud more than one victim." Further, the operation of the scheme required careful planning and execution. Both the receipt of the 95 checks and the association between Okpala and L. Chiji indicate that the role of Okpala in the scheme involved more than minimal planning. We find no error in the district court's action in relation to Okpala's sentence.
 
 
 32
 For the reasons stated herein, the decisions of the court below are
 
 
 33
 AFFIRMED.
 
 
 
 [1]
 L. Chiji gave an unusual explanation of how he came to have the five checks which he had deposited, asserting that he had somehow obtained them on the black market in Lagos, Nigeria
 
 
 [2]
 This defendant's fingerprints appeared on items such as deposit items, a signature card, withdrawal slips, and checks