UNITED STATES of America

v.

Blaine A. WHITE, Defendant.

Cr. A. No. 90–427.

United States District Court,
District of Columbia.

Dec. 20, 1990.

James Benny Jones, Washington, D.C.,
for plaintiff.

Eric BuBelier, U.S. Attorney's Office, Washington, D.C., for defendant.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

After a hearing on December 11, 1990, this Court denied defendant's Motion to Dismiss on Counts I, III, IV, and V of the indictment. For the reasons stated in open court on December 11, 1990, and for the reasons stated below, the Court shall deny defendant's motion to dismiss. This memorandum opinion supports the Court's order issued from the bench on December 11, 1990.

## FACTUAL BACKGROUND

On or about March 19, 1990, the defendant was indicted in Criminal No. 90–129 (hereinafter, "White I"). The two-count indictment charged the defendant and a co-defendant, Harold Linden, with knowingly possessing a birth certificate in the name of William Smith Baldwin with the intent that such document be used to defraud the United States in violation of 18 U.S.C. §§ 1028(a)(4) and 2 (Count I), and with the making of false statements in an application for a passport for use by Harold Linden in violation of 18 U.S.C. § 1542 (Count II).

As to Count I (the "birth certificate charge"), the Court charged the jury that to convict the defendant, the government had to prove beyond a reasonable doubt that the defendant possessed an identification document other than one issued lawfully for use by him, that the defendant intended to use the document to defraud the United States, and that the defendant acted willfully.

As to Count II (the "passport charge"), the jury was instructed that the government had to prove beyond a reasonable doubt that the defendant made a false statement in a passport application, that the defendant intended to secure the issuance of a passport, and that the defendant acted willfully and knowingly.

The defendant was acquitted on Count I and there was a hung jury on Count II.

The court subsequently granted a mistrial and, on July 25, 1990, dismissed Count II without prejudice.

On or about October 9, 1990, the defendant was charged in a five-count indictment in this case (hereinafter, "White II").

In Count I, the indictment charged that the defendant conspired with defendant Weyforth, Harold Linden and others (1) to furnish Linden with a false British Passport in the name of Norman Harold Moore for use to enter the U.S., (2) to obtain by fraud, for use by Linden, an I.N.S. Service Form I–94 in the name of Norman Moore, (3) to make false statements in an application for a U.S. passport for Linden, an alien, in the name of William Smith Baldwin, and (4) to conceal, harbor, and shield from detection Linden, an alien who had come to, entered, and remained in the U.S. in violation of law, in violation of 18 U.S.C. § 1543, 18 U.S.C. § 1546, 18 U.S.C. § 1542, 8 U.S.C. § 1324(a)(1)(C) and 18 U.S.C. § 371.

In Count III, the indictment charged the defendant and his co-defendant, Thomas G. Weyforth, with knowingly and in reckless disregard of the fact that Linden, an alien, had come to, entered, and remained in the U.S. in violation of the law, concealing, harboring and shielding Linden from detection, in violation of 8 U.S.C. § 1324(a)(1)(C) and 18 U.S.C. § 2.

In Count IV, the indictment charged the defendant with willfully and knowingly making false statements in a passport application with the intent to secure the issuance of a U.S. passport for the use of Linden by stating in the said application that he had known the applicant for five years and that he had reason to believe the applicant was a U.S. citizen or national, when in truth and in fact, and as the defendant then and there well knew, he had not known the applicant for five years and that the applicant was not a citizen or national of the U.S., in violation of 18 U.S.C. § 1542.

In Count V, the indictment charged the defendant with willfully and knowingly aiding and abetting Linden to make false statements in a passport application, with

the intent to induce and secure the issuance of a U.S. passport, by providing Linden with the name "William Smith Baldwin" and the social security number 230–96–0467 to be placed on a passport application when the defendant and Linden knew that the name and social security number were not that of Linden, in violation of 18 U.S.C. § 1542 and 18 U.S.C. § 2.

The defendant now moves to dismiss Counts I, III, IV and V based on the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and on the incorporated principal of collateral estoppel. In the alternative, he seeks to order preventing the government from presenting any of the evidence presented in White I in this case.

## ANALYSIS

The Double Jeopardy Clause of the Fifth Amendment states: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

■ The Supreme Court has consistently adhered to the rule that a retrial following a mistrial because of a deadlocked jury does not violate the Double Jeopardy Clause. *Richardson v. U.S.*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). *See also United States v. Reis*, 788 F.2d 54, 56 (1st Cir.1986). Therefore, retrial on Count II of White I is not barred by double jeopardy. The government may, again, prosecute the defendant for the alleged passport fraud.

The defendant alleges that prosecution in White II would subject him to double jeopardy since the government, according to the defendant, is charging the same offenses of which he was acquitted in White I. The defendant argues that the same evidence will be used in this second prosecution and that the government will again focus on the defendant's "intent" when he committed the acts in question. The defendant argues that the government is precluded from litigating the issue of intent again since the defendant was necessarily acquitted in White I when the government was unable to prove beyond a reasonable doubt that the defendant knew that Mr. Linden was not, in fact, William Smith Baldwin.

■ Subsumed in the prohibition on double jeopardy is the application of collateral estoppel. In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Court held that collateral estoppel was part of the Fifth Amendment's guarantee against double jeopardy. The Court explained the concept of collateral estoppel as follows:

> It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

*Id.* at 443, 90 S.Ct. at 1194. In order to apply these collateral estoppel principles in criminal cases, the court must examine the record of the prior proceeding and conclude whether a rational jury could have grounded its verdict on an issue other than that which the defendant is seeking to foreclose from consideration. The defendant carries the burden of proving that the previous jury necessarily decided the issue that he seeks to foreclose in his favor. *See Dowling v. U.S.*, 493 U.S. 342, 110 S.Ct. 668, 673, 107 L.Ed.2d 708 (1990).

■ When there is more than one possible reason for the first jury's verdict, and the court cannot say for certain which reason the jury grounded its verdict upon, a second prosecution using evidence of actions upon which the defendant has been acquitted is not prohibited. *U.S. v. Irvin*, 787 F.2d 1506, 1515–16 (11th Cir.1986).

In his effort to meet this burden, the defendant here points to the government's statement at the close of the government's evidence in White I where the government indicated that since there was no dispute concerning the actual acts charged, "the issue only [sic] is the intent of the defendant at the time he performed the acts." The defendant contends that this narrowing of the disputed issue and the fact that the jury acquitted the defendant on Count I in White I necessarily indicates that the jury found that the defendant did not have the requisite level of culpability when he

possessed a birth certificate in the name of William Smith Baldwin. The defendant contends that, when the prosecutor made these remarks, the government was conceding that the only issue remaining for the jury was whether the defendant knew that the individual with whom he was dealing was not, in fact, William Smith Baldwin, but Harold Linden.

The government objects to the defendant's broad definition of what constitutes "intent" which essentially encompasses knowing whether Linden was, in fact, Baldwin, and argues that if the issue of intent were as broad as the defendant alleges, the defendant would have been acquitted of Count II as well. Both counts required proof that the defendant knew that Mr. Linden was not William Smith Baldwin.

This Court agrees with the government on this second point. The defendant's definition of "intent" or "knowledge" would have precluded an acquittal on both counts in White I. The fact that the jury did not acquit the defendant on Count II suggests that the defendant's knowledge of Mr. Linden's identity was not the only issue remaining for the jury's determination. Furthermore, this Court does not consider itself bound by the prosecutor's statements concerning what the government considers to be the outstanding issues for jury determination. The instructions to the jury did not instruct them that any material facts were already decided. Therefore, the Court must review the jury's verdict to determine if there is any basis, other than the one advanced by the defendant, which would stand as a basis for the jury's acquittal on Count I in White I.

There are several possible issues upon which the jury may have based its verdict. The jury could have found that the defendant possessed the birth certificate on November 1, 1989, but did not have the intent to defraud the United States at that time. Similarly, the jury could have found that White had the requisite intent on November 13, 1989, but did not possess the birth certificate on that date.[1]

Since there were other issues, other than the issue of knowledge of Mr. Linden's identity, which could have accounted for the defendant's acquittal, the defendant has failed to meet his burden of proving that trying the defendant on Counts I, III, IV and V of the White II indictment would pose double jeopardy problems.

Taking another attack on the double jeopardy issue, the defendant argues that the White II indictment charges the defendant with the same offenses of which he was acquitted in White I.

The test for determining whether successive prosecutions involve the "same offense" is flexible and pragmatic, focusing on the proof actually utilized to establish the charge rather than the formal elements of the alleged identical offenses. Under this "same evidence" test, the second prosecution is barred by double jeopardy if the evidence actually used to prosecute the first offense would suffice to convict in the second offense as charged. *U.S. v. Ragins*, 840 F.2d 1184 (4th Cir.1988).

The defendant contends that the government will utilize the same evidence it produced at the White I trial in an attempt to convict the defendant of the more expanded indictment in White II. The defendant's analysis suggests that he believes that the government will utilize the same evidence to prove the charge of fraudulently possessing the birth certificate with the intent to defraud the government as it would to prove the charges in the instant indictment. The analysis suggests that the charges stem from the same incident.

The defendant is mistaken as to his analysis of the evidence to be presented in White II. It will not be identical to that presented in White I. One major addition to the White II evidence will be the testimony of Mr. Linden, who was the defendant's co-defendant in White I. In fact, the

---

**1.** The government points out that the second alternative is certainly possible since there was no evidence presented at trial that the defendant actually possessed the birth certificate on November 13, 1989.

government argues that most of the White II indictment is based on Mr. Linden's testimony given after the conclusion of White I.

More importantly, the instant indictment does not charge the defendant with the same conduct of which he was charged in White I. While the indictment in White I charged the defendant with a single act, possessing a birth certificate in another's name with the intent that such document be used to defraud the United States, the instant indictment charges a series of criminal acts which occurred at different times and in different places. The act with which the defendant was charged in Count I in White I is not even alleged. Instead, the indictment charges the defendant with conspiracy and sets forth several overt acts done in furtherance of that conspiracy. Proof of these overt acts would not have proven the birth certificate charge in White I. For instance, the criminal act of knowingly possessing a birth certificate in Baldwin's name with the intent to use the document to defraud the government occurred at a completely different time than the criminal act of conspiring to supply Linden with a false British passport, to fraudulently obtain an INS Form I–94, to make false statements on Linden's U.S. passport application and to conceal Linden as an illegal alien. Each of these acts in furtherance of the conspiracy occurred between July 1989 and December 1989. None of these acts charged in White II are identical to the charge in Count I in White I. Only the passport charges encompassed in Counts I and II of White II relate to any charge in White I—and *these* charges are identical to Count II of White I, the Count which resulted in a hung jury.

■ The defendant points to the Fourth Circuit's opinion in *United States v. Ragins,* 840 F.2d 1184 (4th Cir.1988), for the proposition that if the same evidence is presented in the second prosecution, the defendant is automatically considered to be subjected to double jeopardy. This is not a fair reading of the case. In fact, the *Ragins* analysis may be turned back on the defendant here. In *Ragins,* the Fourth Circuit analyzed two successive conspiracy prosecutions to determine whether the Double Jeopardy Clause was violated by the second prosecution. The court looked to the following five factors in assessing the validity of the double jeopardy claim:

(1) the time periods covered by the alleged conspiracies;

(2) the places where the conspiracies are alleged to have occurred;

(3) the persons charged as co-conspirators;

(4) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other descriptions of the offenses charged which indicate the nature and scope of the activities being prosecuted;

(5) the substantive statutes alleged to be violated.

Although *Ragins* deals with successive conspiracy charges and may, in fact, not be applicable to the defendant's case where the first prosecution was not for conspiracy, it *does* illustrate the government's contention that the individual acts alleged in White II are altogether different in time, place, overt act and substantive statute violated.

The government's burden of proving a conspiracy and proving the commission of the overt acts in Count I necessarily requires the government to prove different facts. At the very least, the evidence which may have been presented in White I as peripheral and not applicable to the particular charges in the White I indictment would gain crucial significance in White II. This analysis applies equally to the defendant's effort to dismiss the allegedly duplicative counts and his effort to exclude certain evidence.

The defendant's second argument is that even if the government is allowed to proceed on prosecuting Counts I, III, IV and V, it is precluded from using the same evidence it used in White I.

The government concedes that it will be precluded from arguing to the jury that the defendant *possessed* the birth certificate on November 1 and 13, 1989 with the intent to defraud the United States Government. However, since the government has estab-

lished that the defendant's acquittal on Count I in White I could have been based on several factors, evidence previously presented in White I which did not have a direct bearing on either count of the White I indictment should be allowed to be presented in White II as evidence.

In *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 672, 107 L.Ed.2d 708 (1990), the Supreme Court held that "[r]elevant and probative evidence that is otherwise admissable under the Rules of Evidence [should not be excluded] simply because it relates to alleged criminal conduct for which a defendant has been acquitted." In *Dowling,* the Supreme Court specifically held that an acquittal in a criminal case does not always preclude the government from religating an issue in a subsequent action governed by a lower standard of proof. *Id.* 110 S.Ct. at 672. This language concerning burden of proof may have been troubling to this Court but for the Supreme Court's further rejection of "the Third Circuit's holding that the common-law doctrine of collateral estoppel in all circumstances bars the later use of evidence relating to prior conduct which the government failed to prove violated a crime." *Id.* at 673.

The Supreme Court's holding in *Dowling* suggests that the analysis concerning what evidence to allow in the subsequent prosecution is identical to this Court's Double Jeopardy analysis. It is the defendant's burden to demonstrate that the issue he seeks to foreclose was actually decided in White I. Since the defendant has failed to demonstrate that his acquittal on Count I was based on a jury determination that the defendant did not know Mr. Linden's true identity, evidence relating to this issue cannot be precluded from White II. In *Dowling,* the Supreme Court held that evidence introduced to prove a charge of which the defendant is acquitted can be introduced in a subsequent prosecution if the prior acquittal did not determine an ultimate issue in the present case. *Id.* at 672. Evidence of the defendant's knowledge of Linden's identity, as well as evidence concerning the acquisition and subsequent transfer of the birth certificate, will not be excluded since it would, indeed, be relevant and probative

evidence otherwise admissable under the Federal Rules of Evidence simply because it related to alleged criminal conduct for which the defendant has been acquitted. *See United States v. Salamone,* 902 F.2d 237 (3rd Cir.1990) (applying *Dowling* and holding that defendant's acquittal on drug trafficking conspiracy charges did not preclude introduction of evidence in subsequent weapons prosecution that coconspirators had been at locations where weapons involved even though same evidence introduced in drug trafficking case since evidence collateral to offenses charged.)

▮ The government has demonstrated that the jury's acquittal on Count I in White I could have been based on a number of issues. The government should not be precluded from introducing evidence concerning the *acquisition* and *subsequent transfer* of the birth certificate. *See United States v. Irvin,* 787 F.2d 1506, 1516 (11th Cir.1986) (collateral estoppel no bar to government introducing evidence of acts allegedly in furtherance of a conspiracy to violate civil rights when defendant had been previously acquitted of depriving same victim of secured rights).

## CONCLUSION

For the foregoing reasons, and for the reasons stated in open court on December 11, 1990, defendant's motion to dismiss shall be DENIED.

## ORDER

In accordance with the hearing held in the above case on December 11, 1990, and the Memorandum Opinion December 20, 1990, it is this 20th day of December, hereby

ORDERED that

1) Defendant's Motion to Dismiss for Prosecutorial Vindictiveness is denied;

2) Defendant's Motion to Dismiss on Double Jeopardy is denied.