**UNITED STATES of America, Appellee,**

v.

**Blaine A. WHITE, Appellant.**

No. 91–3021.

United States Court of Appeals, District of Columbia Circuit.

Argued May 2, 1991.

Decided June 28, 1991.

---

James Benny Jones, for appellant.

Barry Wiegand, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Thomas J. Tourish, Jr., Asst. U.S. Atty., were on the brief, for appellee.

Roy W. McLeese, Asst. U.S. Atty., also entered an appearance, for appellee.

Before EDWARDS, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

HENDERSON, Circuit Judge:

## I.

Beginning on June 28, 1990, Blaine White was tried in district court on a two-count indictment. Count I alleged that the defendant possessed an unlawfully issued birth certificate with the intent to defraud the United States in violation of 18 U.S.C. §§ 1028(a)(4) & 2. Count II alleged that he made false statements in an application for a United States passport in violation of 18 U.S.C. §§ 1542 & 2. At trial, the government presented evidence showing that the defendant was the lawyer for Harold Linden, a Canadian citizen. On November 1, 1989, through false representations to the Maryland Division of Vital Records, the defendant obtained a certified copy of a birth certificate bearing the name William Baldwin. The defendant provided Linden with the birth certificate and also with a fake social security number. On November 13, 1989, the defendant and Linden appeared before a passport agent at the U.S. State Department. Linden applied for a U.S. passport in the name of William Baldwin; as proof of his identity, he offered the birth certificate in that name that the defendant had earlier obtained. On the passport application, Linden also used the fake social security number he had received from the defendant. In support of Linden's false passport application, the defendant signed an affidavit identifying the applicant as Baldwin and swearing that he had known the applicant for five years. As a result of this application, Linden obtained a U.S. passport in the name of William Baldwin. Linden was later arrested and, at the time of his arrest, he possessed both the U.S. passport bearing the name of William Baldwin and a British passport, also with his picture on it, in the name of Norman Moore.

The trial judge charged the jury that it could convict on Count I of the indictment only if it found that the defendant possessed an identification document other than one issued lawfully for use by him; that he acted wilfully; and that he intended to use the document to defraud the United States. To convict on Count II, the court charged the jury it must find that the defendant made a false statement in a passport application; that he acted wilfully; and that he intended to secure the issuance of a passport. The jury acquitted the defendant on Count I (the birth certificate count) and was unable to reach a verdict on Count II (the passport count). The district court granted a mistrial on Count II and dismissed it without prejudice on July 25, 1990.

On October 9, 1990, the government filed a second indictment charging the defendant and a co-defendant with offenses arising out of the same course of events. Count I of this indictment alleged as a violation of 18 U.S.C. § 371 the defendant's participation in a conspiracy to provide Linden with a fake British passport in the name of Norman Moore; to fraudulently obtain a U.S. Immigration and Naturalization Service Form I–94 in the name of Norman Moore; to make false statements in an application for a U.S. passport in the name of William Baldwin; and to shield from detection Linden, who remained in the country as an illegal alien. Count III alleged that, in violation of 8 U.S.C. § 1324(a)(1)(C) and 18 U.S.C. § 2, the defendant shielded from detection Linden, who was in the country as an illegal alien. Count IV essentially restated Count II of the earlier indictment, charging the defendant with knowingly making false statements in a passport application to secure issuance of a passport. Count V charged the defendant with aiding and abetting Linden in making false statements in a passport application in violation of 18 U.S.C. §§ 1542 & 2.[1]

In the district court, the defendant sought dismissal of the second indictment on two grounds. First, he argued that, in order to acquit him on Count I of the first indictment (White I), the jury must have found that he did not act wilfully. He contended that collateral estoppel precluded the government from retrying under the second indictment (White II) the issue of his intent when he committed the acts in question. He also argued that the fifth amendment's double jeopardy clause prohibited the government from introducing in the second trial any evidence it had used in the trial on the count of which he was acquitted in White I. The district court rejected both arguments, holding that the government could proceed with the prosecution of the second indictment. *See United States v. White,* 757 F.Supp. 45 (D.D.C. 1990). Seeking review of the district court's ruling, the defendant brought this interlocutory appeal. *See Abney v. United States,* 431 U.S. 651, 657–62, 97 S.Ct. 2034, 2039–41, 52 L.Ed.2d 651 (1977).

## II.

The double jeopardy clause incorporates the doctrine of collateral estoppel. *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 671, 107 L.Ed.2d 708 (1990); *see also United States v. Bowman,* 609 F.2d 12, 17 (D.C.Cir.1979).

"Collateral estoppel" ... means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit....

... Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.

*Ashe v. Swenson,* 397 U.S. 436, 443–44, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970) (footnote and internal quotation omitted). When a defendant seeks to invoke collateral estoppel, the burden is on him to "demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling,* 110 S.Ct. at 673.

At trial, because the defendant did not deny committing the acts charged, the government stated at the close of its evidence that "the issue only [sic] is the intent of the defendant at the time he performed the acts." The appellant grounds his collateral estoppel argument on this statement, contending that, in acquitting him of the birth certificate count, the jury must have found that he lacked what he refers to as "knowledge/intent."

---

1. Count II of the second indictment charged only the co-defendant.

Under the appellant's argument, the acquittal represents a jury finding that his motives in connection with the possession of the birth certificate were entirely pure. He reads the acquittal as conclusively establishing both that he believed Linden to be Baldwin (and therefore did not act wilfully in illegally possessing the birth certificate bearing Baldwin's name) *and* that he did not intend to use the document to defraud the United States. He argues that the first verdict creates a collateral estoppel bar to the second prosecution: once the jury determined he was unaware of Linden's true identity, he asserts, the government could not relitigate this issue as it would have to in the second prosecution.

██ We do not read the implications of the appellant's acquittal so broadly. As the Court directed in *Ashe,* we examine the "charge and other relevant material," 397 U.S. at 444, 90 S.Ct. at 1194, to decide whether the jury must indeed have determined the issue the appellant seeks to foreclose from further litigation. This leads us to reject the appellant's broad collateral estoppel argument. Had the jury found, as the appellant contends, that he actually believed Linden to be William Baldwin, it would have acquitted him on the second count as well as the first. The finding that the defendant believed Linden to be Baldwin would have extended to and controlled the verdict on the second count and the jury would have found that the defendant did not wilfully make a false statement in the passport application. Since the jury reached no verdict on the passport count, it must have based the Count I acquittal on a finding other than that which the appellant urges. *Cf. United States v. Scott,* 464 F.2d 832, 833 (D.C.Cir.1972) (where jury acquitted defendant of armed robbery but reached no verdict on unarmed robbery, it did not necessarily find that defendant was not robber because that finding would have compelled acquittal of unarmed robbery as well; second trial for unarmed robbery not barred).

Accepting the appellant's argument would require us to assume that the jury acted inconsistently, reaching opposite findings on the same issue in the different counts. Because we are loath to impute such inconsistency to the jury, *cf. United States v. Powell,* 469 U.S. 57, 68, 105 S.Ct. 471, 478, 83 L.Ed.2d 461 (1984) (noting "assumption that the jury acted rationally"), we hold the appellant has failed to carry the burden *Dowling* places on him to establish that the issue he seeks to foreclose was in fact determined in the first trial. *See* 110 S.Ct. at 673. Collateral estoppel does not bar the relitigation, under the second indictment, of the appellant's knowledge of Linden's true identity.

### III.

██ The appellant next makes a series of arguments based on the double jeopardy clause. First, he attempts to pull from the double jeopardy clause a "same evidence" component that would bar from subsequent prosecutions all evidence the government has introduced in an earlier prosecution against the same defendant. In *Grady v. Corbin,* —— U.S. ——, 110 S.Ct. 2084, 2093 & n. 12, 109 L.Ed.2d 548 (1990), the Supreme Court rejected this argument, stating that, for the purpose of double jeopardy, "[t]he critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct." Accordingly, the appellant's argument for the sweeping exclusion from the second trial of all evidence introduced in the first one fails.

██ Next, the appellant asserts that, to the extent the second indictment charges crimes for which he stood trial under the first indictment, the double jeopardy clause bars prosecution of the second indictment. First, this argument fails with respect to the count on which the first jury reached no verdict because, for the conduct charged therein, the appellant is in continuing jeopardy. *See Richardson v. United States,* 468 U.S. 317, 326, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984) ("a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which the petitioner was subjected"). Nothing prevents the government from retrying the appellant in connec-

tion with the conduct charged in the passport count of the first indictment: "retrial following a 'hung jury' does not violate the Double Jeopardy Clause." *Id.* at 324, 104 S.Ct. at 3085 (citing *Logan v. United States*, 144 U.S. 263, 297–98, 12 S.Ct. 617, 627–28, 36 L.Ed. 429 (1892)). Since Count IV of the second indictment merely restates the charge in the passport count of the first indictment, prosecution of this count does not offend the double jeopardy clause.

 The double jeopardy clause also offers no help to the defendant in his attack on Count III of the White II indictment. That count alleges that he knowingly harbored an illegal alien. This charge appeared for the first time in the second indictment and is unconnected with the White I allegations. It poses no double jeopardy problems.

With respect to the remainder of the second indictment, Counts I and V, the appellant asserts that the Supreme Court's holding in *Grady v. Corbin*, — U.S. —, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), bars a second trial because, in connection with these counts, the government would reprove conduct for which the appellant was prosecuted under the first indictment. In *Grady*, the Court stated:

> [T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

*Id.* 110 S.Ct. at 2093. We need not reach this argument because the government has conceded, both before the district court, *see* 757 F.Supp. at 49–50, and in this court, that it may not reprove the conduct involving the birth certificate offense unsuccessfully prosecuted under the first indictment. *See* Government Brief at 32.[2]

We note that the government's concession limits it only slightly in the prosecu-

tion of Counts I and V. The government may still prove the defendant's conduct, for which he was not prosecuted in the first trial, of providing Linden with the fake social security number to use on the passport application. It may also reprove the defendant's sworn statement—as to which he is in continuing jeopardy—that he had known Linden as William Baldwin for five years.

## IV.

The appellant's collateral estoppel argument lacks merit and we affirm the portion of the district court's order rejecting it. Because the government agrees that it may not reprove the White I birth certificate offense at the second trial, we also affirm that portion of the district court's order rejecting the appellant's double jeopardy challenge to the second prosecution.

So ordered.

---

**2.** The government concedes that it "cannot prove either the conduct of unlawfully procuring the birth certificate from the vital records office with intent to defraud the U.S. at that time, or of unlawfully possessing it with such intent at the passport office, as an essential element of the offenses charged in the second indictment." Government Brief at 32.